The next case on for argument is Barnett v. Ministry of Culture and Sports. May it please the Court, Andrew Schwartz for the Ministry of Culture and Sports of the Hellenic Republic of Greece. The District Court held that Greece sacrificed its sovereign immunity by seeking to recover cultural heritage property that Greece claims was stolen from it and exported illegally. No court has previously held that a foreign sovereign can be sued in the United States under the FSIA for taking action to enforce its patrimony laws. The District Court was wrong. Oh, so that's interesting. So you acknowledge that the letter that was sent to Sotheby's was just an attempt to enforce the patrimony law, right? Absolutely. Right. So, I mean, there's a lot of discussion in the briefs about what is the act for purposes of the Foreign Sovereign Immunities Act that is the predicate for jurisdiction, and everybody seems to focus on this letter, right? But as I read the complaint that was filed against Greece, the parties are trying, or the plaintiffs are trying to determine the ownership of the statue, right? And so what's at issue is not anything particular to the letter, but Greece's claim of ownership over the statue. Is that right? Well, Greece's claim to ownership over the statue. Right. Yeah. That's certainly part of what the patrimony laws provide. Right. And so in the way Greece asserted ownership over the statue was by passing the patrimony law. So is it your position, so does this lawsuit put into issue the legitimacy of the patrimony law? Well, if in the course of litigating the merits somewhere where there was jurisdiction, the plaintiffs were going to try to attack the patrimony law, it might. That question is not before us today, given that this case was adjudicated only on a motion to dismiss on the FSIA, and the motion was denied. So when we apply the commercial activity exception to determine whether it's applicable here, we have to distinguish between the act, and there's really no dispute about what's the act in this case. The letter is the act. And then here's where there's an additional element, which is dispositive in our view. The act has to be in connection with commercial activity, quote, elsewhere. Elsewhere in this context is Greece. So in order for there to be jurisdiction here under the commercial activity exception, the FSIA Where does this statue end up but back in Greece if the Ministry of Culture gets its way? Which I'm not saying it shouldn't, but I mean just The statute would be repatriated to Greece. Right. So we're injecting something back in Greece that Greece is making a claim to. But that doesn't make the activity in connection with the letter that was sent commercial activity. Because what Greece was doing here was enforcing its patrimony laws. That is a uniquely sovereign prerogative. The only place for the Barnetts to fight this out is in Greece? The record does not reflect what alternatives they might have. Certainly that's the most obvious choice, yes. Because the question here is, is there United States jurisdiction under the FSIA for this declaratory judgment action that the Barnetts and Sotheby's brought? And the answer is no. Because the only way you can establish subject matter jurisdiction or for that matter personal jurisdiction over a foreign sovereign government in our country is under the FSIA. And you have to satisfy a specific statutory exception. The only one that's invoked here and that could plausibly be invoked is the commercial activity exception. Every time this comes up, and it comes up frequently, not necessarily in reference to patrimony laws, I puzzle over the Supreme Court's jurisprudence here because it makes me distinguish between the act and the purpose. But characterizing what is act and what is purpose is by no means obvious. So, for example, in this case you say that Greece is enforcing the patrimony law. But what the patrimony law does is not simply to prohibit exports, for example. It also creates ownership. Right? So the way Greece is enforcing its patrimony law or attempting to enforce its patrimony law by sending the letter is by asserting a claim of ownership. Right? I mean, that's what makes this work is that the patrimony law says Greece owns it. Well, fair enough. I'm not at least suggesting there's anything wrong with that as a matter of law that Greece can determine who owns stuff that's in the ground in Greece. Fine. The government of Greece claims it owns this under that provision. But when it comes to the United States, what it's saying to Sotheby's is we own it. They don't own it. And anyone could make that claim, and it's a kind of commercial claim. It's a claim that we own it. We might have owned it because somebody stole it from us. We might own it because of some dispute over a will. Or in this case, we own it, says Greece, because the patrimony law says we own it. But what they're doing is telling Sotheby's we own this. Why isn't that essentially a commercial activity? Well, it is no different in that respect than what happened in the Haleo case, in which the Philippines, exercising a statutory mandate, pursued misappropriated public assets that the Marcoses had looted. And in that case, the Ninth Circuit said that's a uniquely sovereign activity. In fact, we have a lot of cases where governments expropriate property, right? And that's held to be a pretty solidly sovereign activity. Quintessentially sovereign. What? Quintessentially sovereign, right. Now, isn't the patrimony law essentially that? Isn't Greece saying all of these artifacts, whether they now belong to whoever they belong to right now, we declare they're now the property of the state of Greece, right? They did that in 1934. Is that right? Greece has the 1932 and the 2002 statutes that do establish ownership over artifacts dating back prior to 1453, if I remember the year. But, yes. But the expropriation issues in United States litigation are addressed under the expropriation exception 1605a3. It's an entirely different rubric. The plaintiff here has not invoked the expropriation exception. So there's no contention in this case that there was something about the patrimony laws that improperly dispossessed the Barnett, Sotheby's or anybody else of ownership of this statute. Excuse me. Does the patrimony law assert ownership of material that was exported from Greece before 1934? It's universal in terms of if the artifact dates back to a certain period as this one does. I see. Then it doesn't matter when this left Greece. That's correct? It does say, doesn't it, say all antiquities movable or immovable found in Greece and in any state land and rivers, lakes and at the bottom of the sea and in municipal, monasterial and private estates from ancient times onwards. Oh, I see. From ancient times onwards are the property of the state. Correct. So even if it's not currently in Greece, if it was from ancient times onward found there, it is the property of the state. That's right. And, by the way, this patrimony law of Greece's, while it's unique to Greece, it's very much like other foreign patrimony laws. And I thought the amici made a very helpful contribution in their brief in this appeal putting that in context. And it's not the first time this Court has encountered a law like this. This was at issue in the Schultz case, a criminal case, in which Judge Meskel wrote a very lengthy opinion respecting the patrimony law of Egypt in that case. But to bring this back to what's at the core of this appeal, the question is whether these plaintiffs could bring a declaratory judgment action. And, you know, there's a separate question about whether this is a claim in personam, which I'll hope to get to momentarily. But the question is whether these plaintiffs could bring this action. And the only pathway to do that is under the commercial activity exception. They have to show that there was an act in connection with commercial activity. And I sympathize, Judge Lynch, with your comments about struggling with the definition of commercial. You won't be the first court of appeals to have to do that. The Supreme Court has done it. I mean, Judge Souter — No, we've done it, too, in repeated cases. That's why I have this problem. It's very difficult to distinguish when you have an act that partakes — could be characterized differently in part depending on what you see the purpose as. It's hard to distinguish that. There's a way to do it. Well, we've said that we have to identify the act of the foreign sovereign state that serves as the basis for the plaintiff's claims, right? That's true. So the plaintiff's claims here are they own the statue. Greece claims to own the statue, and we want an adjudication of ownership in the statue. Absolutely. So there's nothing unique about sending a letter to Sotheby's. What's at issue is Greece's assertion that this is the property of the state and their competing claim that it's their private property, right? Here's the most important factor under the cases, and I know my time is short if we're going by the clock. You have to look at the power that the foreign state is exercising. That is the touchstone. That is what cuts through all the definitional confusion in the case law. That is what cuts through the characterization issues that are frequently presented. So what's your best case that this kind of claim is not commercial? Best precedent? Yes. I have three. And I'd say that my adversary has zero. The three are Hileo, the Philippines case that I referenced. We have the MOL case, which is the case in which Bangladesh terminated an export license contract pertaining to rhesus monkeys. So if you look at this the way Judge Lynch was suggesting, any private party can terminate a licensing contract in some context. But Bangladesh here was exercising a license contract that pertained to the export of wildlife from Bangladesh, and the court of appeals said that's a uniquely sovereign function because no one else, no private party can control export licenses. And then we have the DeSanchez case from the Fifth Circuit in which Nicaragua's central bank, in managing the nation's foreign exchange, another intrinsically public activity, issued a check. Well, anybody can issue a check. And then the government later stopped payment on the check. Okay. You could look at that in a vacuum and say, well, private parties issue checks and stop payment. Well, that's true. But they don't do it in the context of exercising sovereign functions, sovereign prerogatives, as regulators of the market, as the case law says, as opposed to private players within the market. You have to look at the context, but you critically have to look at the power. What was the nature of the power? Here, Greece was exercising regulatory power and police power. No private party could send a letter to Sotheby's asserting a violation of Greek's patrimony laws. What does Greece do if it doesn't get the statute back? I mean, it's sitting here, right? It's sitting in the United States. Now, it's under the custody of the district court right now. There's a custody order. What does Greece do if – well, let me see if I understand the question. Greece has been sued. What Greece does is it sits. Having rendered this statute unsalvable in the United States, it sits and waits for the plaintiffs to come to them to negotiate some deal about how much money is going to change hands to let this go back to Greece or how much money is going to change hands to let it stay in the United States. That's what happens if we decide this case in favor of Greece, right? Well, if the case is dismissed, the dynamic changes, I can't predict the future. Certainly, that's one scenario that could unfold. Whereas, if it stays – if the plaintiffs prevail, then the court will litigate whether, under presumably Greek law, this statute falls within the patrimony law and belongs to Greece. It'd be a fascinating litigation with discovery concerning what happened in 1967 and 1973 and maybe – Or even whether there's any evidence that this particular statute, which is a Greek item as we talk about it culturally, may have actually had its origins on the other side of the Ionian Sea in what is now Turkey, right? Because geometric art comes from all over the Greek world of that era and not all of that Greek world is what is now the Republic of Greece. True? I don't pretend to be an expert on – But that's what the litigation would be about, right? That litigation would also go to the state of Greece's authority to issue the patrimony law and whether it had jurisdiction over this object versus other objects and those kinds of questions, wouldn't it? It might, but we're anticipating stances that the plaintiffs would take if the matter were to be determined on the merits in the United States. You talk about the merits, but this goes to the question about what is the predicate for jurisdiction here, right? Because if what the lawsuit puts at issue is a sovereign act of the Greek state, that's different than if it's a commercial activity or if it's a market participant. And if what the litigation puts at issue is the authority of the state to adopt a patrimony law and to declare a certain property the property of the state, it seems like that puts at issue a sovereign act, doesn't it? That's why there's no jurisdiction. Because if we're talking about a sovereign act, and you're spot on, we are, there's no basis for federal court litigation here under the FSI. That's precisely the point. In terms of the remedies, I mean, I noticed that the letter that Greece sent to Sotheby's was copied to the embassy of Greece in the United States. Has there been any – is there – we don't have anything on the record about any kind of separate diplomatic channel or anything Greece is doing. Has that kind of thing ever happened in the recovery, to the recovery of historical artifacts, that there's a diplomatic channel? There's nothing in the record to suggest any diplomatic activity. The record reflects that there's a complaint, there's a motion to dismiss, there's a decision. That's all that's in front of us. Jumping over to Judge Lynch's point, and then we'll let you sit down, and I guess you haven't asked for rebuttal, but we'll hear from Mr. Stein. Have you folks tried any mediation here to see if something can be resolved, looking down the long road that Judge Lynch has directed us down? As far as I'm – Is that a yes or no answer? As far as I'm aware, no. Okay. I'm appellate counsel. I wasn't involved in the district court proceedings. But as far as I'm aware, no. It may be worthwhile. Short answer.  Thank you. Thank you, Mr. Schwartz. Mr. Stein. Thank you, Your Honor. Mr. Chairman, may it please the Court, Gary Stein for the plaintiff and appellees. Judge Benashia, I'd like to start with your questions. This lawsuit does not put at issue Greece's cultural patrimony law and its authority to adopt it. That's not the case, and I think it's important to explain how these cultural patrimony laws work. They don't declare ownership on the part of the Greek state or whatever state's laws in question over all cultural property wherever located under any circumstances. They declare ownership of cultural property that's still in the ground, hasn't been reduced to private possession yet, going forward. Okay? So that's why, if the case were as simple as you're positing... The passage that I was reading where it says found in... Found. Correct, Your Honor. Has it actually been found after the date of this enactment? That's exactly right. That's different than what your opposing counsel was saying. Well, he's incorrect, and that's why our case turns on the facts. You don't see any allegation in our complaint challenging the authority of Greece to enact this law or seeking a declaration that it's invalid. There has to be proof in these cases of a theft, that property was found, you know, in the ground and impermissibly reduced to private possession, taken out of the country, after the effective date of the law. And there are no facts, we believe, either in Greece's letter or that they've ever put forward, and they say they've been investigating this for months, that would establish those facts. And absent that, they don't have an ownership claim. And that's what the lawsuit seeks to accomplish. ...patrimony law for granted and say this statue was not found in Greece or in rivers and lakes and whatever else it says in the terms of it. It was, in fact, already in private possession at the time of the patrimony law and, therefore, taking everything for granted. It doesn't fall within its terms and, therefore, can be privately owned. That's exactly right. And as the complaint does allege, there are literally hundreds, I think thousands... But in cases like this, you might have a dispute like Judge Lynch was saying about, well, it was found over the line. It's not clear that that was Greek territory. And so there's a question about the reach of Greek law to declare that object. I mean... No, again, that wouldn't implicate the validity of the law. If, in fact, this property can be traced to Cyprus... He wasn't asking about the validity of the law as I heard the question. It was about a conclusion that you reach whether this falls within the law that is valid or that you're willing to say is valid. Or it would go to the... Or it could go to the reach of the law, right? Right. You'd be evaluating, like, given the territorial authority of Greece, could it have declared this object, the property of the Greek state? Those kinds of issues could come up in this kind of a litigation. Again, those aren't put at issue in the complaint. This is an ownership claim. And, yes, the same way if a private person claimed it was stolen from their house and the evidence showed it was taken from somebody... somebody else's house with the consent of the owner, they wouldn't have a legitimate ownership claim. That's how I see the significance of the possibility that this could have been found on the other side of the Ionian Sea. Back to what Mr. Schwartz suggests is the first... The court's... The district court's first error in that is that Greece is engaged in commercial activity. That was no error at all because the fundamental question under the case law is... I'm... I am... is whether this was the type of act that a private party can engage in or whether it was a peculiarly sovereign function. And Judge Fella correctly said that this is the type of act that private parties can engage in and do engage in. She cited cases, Judge Hall, involving the exact same fact pattern. Someone consigns a work of art to Sotheby's, a private person sends a letter to Sotheby's claiming ownership, claiming to be the true owner, and the consigner then brings a declaratory judgment action to settle the ownership issue. That's the exact fact pattern we have here and that is commercial activity under the statute. And to address your question... Well, before you get to my other question, I want to ask one just about what you just said. You're saying the sending of the letter was commercial activity and that resonates with me to some degree. But this, for whatever reason, was postulated not under commercial activity in the United States, but as activity in the United States in furtherance of commercial activity elsewhere. So what is the commercial activity that took place in Greece that this activity in the United States relates to? Running museums or something? So the act, Your Honor, is the sending of the letter under the statute. The commercial activity elsewhere is Greece's assertion of its ownership, purported ownership of this property, which also happened elsewhere. Elsewhere just means under the statute outside the United States. Prong 1 is about commercial activity in the United States. 2 and 3 are elsewhere, meaning outside the United States. It doesn't have to be separate from the act in question. Is there some reason why this wasn't considered commercial activity in the United States by virtue of simply sending a claim of ownership to Sotheby's? Well, there's a substantial context requirement under the statute for Prong 1. But this absolutely fits under Prong 3 as well. I have two questions about that. So one is what you said, the act and then the activity. So you say the act is the sending of the letter. But as I read your complaint, your complaint doesn't say, well, regardless of who owns the statue, the fact that you sent us this letter caused us some kind of unique harm. The complaint goes directly to the claim of ownership. You're seeking redress from the claim of ownership. Whether Greece asserted that ownership through a letter they sent to Sotheby's or somebody made a speech in Greece declaring that they owned this particular statue, you'd have the same kind of a litigation, right? There's nothing unique about the letter. Is that right? Well, I think the letter is very important. It was sent on the eve of the auction, specifically with reference to the auction, specifically demanding that the item be immediately withdrawn from the auction. If we had a case where they did not send a letter to Sotheby's, in fact, the Prime Minister of Greece just made a speech on the eve of the auction declaring that this statue was the property of Greece and Sotheby's is about to commit a crime against the Greek people by auctioning it off and that was carried in the newspaper or whatever and it interrupted the auction in the same way, you'd still have the same kind of a controversy, right? It would be a different scenario, you'd have to look at it separately, but this clearly was a case where the activity was directed to the United States and there does have to be an act that has a direct effect in the United States. Maybe he made a speech in the United States or something but the idea that it's a letter that's sent to Sotheby's, you're not seeking relief from the letter, you're seeking relief from the claim of ownership and maybe it doesn't matter because you said that regardless of what the act is, even the sending of the letter is connected to the activity of the claim of ownership. Now your opposing counsel says the claim of ownership is the enforcement of the Greek patrimony law and that is a law enforcement function like these other cases where a government expropriates property and we think that that's a sovereign function so why isn't it that? Why aren't we talking about a case where a state has as a sovereign declared certain property to be its own and it's enforcing that law? Again, we are not challenging the law in the complaint or claiming that it is invalid but this gets to the question that Judge Lynch mentioned when my adversary was speaking distinguishing between the nature and the purpose of the act and the case law and it is on its face a bit of a puzzlement but the statute and the case law provide a very clear answer extraordinarily clear answer yes only a foreign state can make an ownership claim to allegedly stolen property pursuant to a patrimony law that's true but the statute and the case law say that's not the question the question is whether only a sovereign state can make an ownership claim to allegedly stolen property period how do we know that look at the Supreme Court and the Supreme Court in an opinion by Justice Scalia said no those circumstances relate to the purpose of the act not to the nature of issuing bonds and breaching the contract but the lawsuit there was seeking relief for that breach of contract whereas your lawsuit actually goes beyond the letter and goes back to the claim of ownership I think as you just like this lawsuit's going to adjudicate the ownership correct it's an ownership claim that's something that private parties to the sovereign function in that case but I take your point it's not it's not you're saying to me that you're not challenging the authority to adopt the patrimony law and you're taking it as given but it still is you have a claim that goes to the patrimony law itself and its terms because that is the claim of ownership by the Greek state no your honor it's the they are invoking the patrimony law saying that that's it's pursuant to that law that their ownership claim derives from but what I am saying is that the statute in the case law say that that is irrelevant and that's exactly the word that you use judge lynch in the Mortimer case that you decided when you were on the district court it's not in the briefs it's something we looked at in preparation for oral argument but that was a case where Germany private parties had issued certain bonds prior to world war two Germany pursuant to a treaty assumed the obligations of those bonds after world war two Germany said we did this pursuant to a treaty it's a sovereign act judge lynch said absolutely correctly applying weltover whether a government acts pursuant to the enactment of a law or a regulation ratification of a law to apply weltover yes where we always are but it's on I had a similar case not similar another case in the district court luteweiler which was about a photographer who was claiming that the kingdom of Jordan had infringed his trademark and I decided that one also against the foreign country under the fsia but I'll tell you it's not like I'm confident of any of these results because this is a very confusing law not with the statute gives us a very clear formula which is is it about the purpose or the act but telling one from the other is the devil is in that let's talk about the act actually so so you said that the activity is the claim of ownership and you're saying that's something that anybody can do but but does it matter that Greece is collecting the artifacts to preserve cultural heritage as opposed to do anything related to commerce no that's the purpose of that's the purpose that's and that doesn't count under the statute under justice Scalia's ruling like expropriation cases that oh fine the government has declared that certain property belongs to them but actually we just think should think about it as a claim of ownership whether it's pursuant to an expropriation statute or not an expropriation case I think your honor is very different Greece expropriated something within you know its territory which would have the power to do there is a separate prong of the fsia that's not applicable here but that might be a sovereign act they actually go out and grab it but that's not what they did here they acted in the same manner as a private person would by asserting an ownership claim and it's again it's not what they asserted it pursuant to it's whether a private person can assert an ownership claim that Greece actually went out and grabbed it in 1932 and they're just enforcing that law that they did in 1932 no no the whole thesis of our complaint is that it doesn't fall within the law because there's no proof that it was that it was stolen so you know it's not the place to decide the merits although I think you probably have to assume the allegations of the complaint to be true but what all of this highlights is that this is a classic ownership dispute where the state is wearing its hat as a property owner not as a regulator this isn't about regulation they're not they're not regulating exports this is this was gone from Greece decades ago so are you saying this is no different than if under the 1934 act Greece had said that no no one but a Greek can own this stuff and a Greek citizen is forbidden to sell it and then a Greek citizen actually did sell this to your client at some point and now that citizen is coming to the United States and saying it's still mine because I wasn't allowed to sell it a private party could do that even though the underlying basis for the claim has to do with Greek law that's a question of we're going to apply presumably I think you're not challenging the idea that if the United States court has jurisdiction here the ownership issue will be decided pursuant to Greek law yes I mean you're not challenging you said the patrimony law Greek law could come into play your honor but well isn't the whole issue here no I think it's fundamentally a question of New York law to tell you to tell you the truth again it depends potentially on how the litigation shakes out but at the moment we see there are no facts that Greece has by which no facts by which a concern ownership claim under a Greek law under New York law you're saying this doesn't fall under the Greek law because factually it is not something that was found in Greece in the ground post 1934 and then exported in violation of Greek law correct and to highlight the point your honor when Greece itself brought one of the but if you lost that factual proposition if they could establish those facts you are not contesting that under Greek law ownership belongs to Greece in other words if this is something they could prove that in 1940 somebody went digging somewhere outside Athens and found this thing and through various steps your people wound up as holders in good faith or having paid for it in Switzerland or whatever you're not contesting the validity of the Greek law saying this whole thing is unlawful and belongs to Greece or are you there are potential defenses as a matter of due process if the patrimony law hasn't actually been communicated or actually enforced there is a vein of case law to that effect under US case law that I think might be applicable but we're ways off from that and I just want to emphasize as well that when Greece brought one of these cases itself in New York to recover property pursuant to the patrimony law it's the ward case that involved the Mycenaean jewelry they brought a claim for more accurately it was called an action to recover personal property that was how they entitled their cause of action because it's an ownership issue it's about property rights it's not about their sovereign authority to enact the patrimony law if the patrimony law was more like Judge Lynch suggested and it didn't just declare ownership but regulated the way these objects were sold let's say that the patrimony law said it could be sold by a Greek person under certain conditions if they take certain steps and Greece sent a letter to try to ensure that Sotheby's followed the procedures that were laid out in Greek law that would be law enforcement and regulation and there would be immunity in that kind of case is that right? I think that would merit a different analysis for sure but it's absolutely not what we have here what we have here is an ownership claim and that's not me saying it it's what Mr. Valini from the ministry said in his affidavit below he said Greece is asserting an ownership claim. If the enforcement of the law regulating these kinds of transactions would be a sovereign act then why isn't a law that just says you can't have these kinds of transactions a sovereign act? Isn't the activity law enforcement? It's not law enforcement it's not an exercise of law enforcement authority it's an exercise of their purported property rights and yes their ownership right derives from the patrimony law but private people's ownership rights also derive from laws. I just want to clarify one other thing you said which is that you might have a due process defense about the way that the Greek law was communicated so it is possible to say that well even if facially under the terms of the Greek law this belongs to the U.S. law we shouldn't give it back to them because it wasn't adequately communicated to the parties who are in possession of it is that right? If you look at the case laws like McLean and Schultz that involve prosecutions in this area you'll see you know discussion to that effect but that's not what we're alleging in the complaint I'm just trying to answer the questions honestly about whatever could come up that's not the basis for our lawsuit we don't think we ever get there. Excuse me thank you Mr. Stein. Thank you. Thank you both.